**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **SATHEESH MARIMUTHU *et al.*** | **§** | |
| | **§** | |
| **v.** | **§** | **NO. 1:13-CV-499** |
| | **§** | |
| **SIGNAL INTERNATIONAL L.L.C. *et al*** | **§** | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This case is assigned to the Honorable Marcia Crone, United States District Judge, and is referred to the undersigned United States Magistrate Judge for all pretrial matters. Pending before the undersigned is the "Motion and Memorandum in Support of Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2)" filed by Malvern C. Burnett, the Law Offices of Malvern C. Burnett, A.P.C., and Gulf Coast Immigration Law Center, L.L.C. (hereinafter referred to interchangeably as "Burnett" and "the Burnett Defendants"). (Doc. No. 36.) The undersigned has considered the pending motion and the corresponding response (Doc. No. 43). The Burnett Defendants' motion should be denied because the court has specific personal jurisdiction over the Defendants given the number of alleged tortious acts committed by the Defendants that injured the Plaintiffs within Texas.

## I. Background

*A. Procedural Background*

On March 7, 2008, twelve individuals who were allegedly trafficked into the United States filed a putative class action against the Defendants in the Eastern District of Louisiana asserting trafficking, RICO, civil rights, and state law contract and fraud claims. See David v. Signal Int'l, LLC, Civ. A. No. 08-1220 (E.D. La.). That Court denied class certification;[1] and,

---

1. David v. Signal Int'l, LLC, Civ. A. No. 08-1220, 2012 U.S. Dist. LEXIS 114247, at *129 (E.D. La. Jan. 3, 2012).

as a result of this ruling, the Plaintiffs in the instant action filed suit in this District, where they were allegedly subjected to deplorable working conditions at a Signal facility in Orange, Texas. (Doc. No. 1.) On August 7, 2013, the Plaintiffs filed their original complaint in this court against the following Defendants: Burnett, Signal International, L.L.C., Signal International, Inc., Signal International Texas, G.P., Signal International Texas, L.P. (hereinafter referred to as "Signal"), Global Resources, Inc., Sachin Dewan, and Dewan Consultants Pvt. Ltd.

*B. Factual Background*

In the aftermath of Hurricane Katrina, approximately 590 men, including the Plaintiffs, were allegedly trafficked into the United States through the federal government's H-2B guest worker program to provide labor and services to the Signal Defendants. (Doc. No. 1.) The Plaintiffs claim they were lured to work for Signal through the fraudulent promise of legal and permanent work-based immigration to the United States for themselves and their families. (Id., p. 4.) Subsequently, after coming to the United States, the Plaintiffs were allegedly subjected to forced labor and other serious abuses at Signal operations in Orange, Texas. (Id.)

The Burnett Defendants consist of Malvern C. Burnett and his two corporations: Gulf Coast Immigration Law Center, L.L.C. and Law Offices of Malvern C. Burnett, A.P.C. The Plaintiffs accuse Burnett of conspiring with Signal and other Defendants to recruit Indian welders and pipefitters to fill anticipated H-2B guest worker jobs at Signal's Orange, Texas operations with false promises of permanent residency in the United States for the workers and their families. (Id.)

## II. Jurisdiction

The Burnett Defendants move to dismiss the instant case under Federal Rule of Civil Procedure 12(b)(2) alleging that this court lacks personal jurisdiction over them. (Doc. No. 36.)

Rule 12(b)(2) requires a court to dismiss a claim if it does not have personal jurisdiction over the defendant. Grynberg v. BP P.L.C., 855 F. Supp. 2d 625, 638 (S.D. Tex. 2012); see FED. R. CIV. P. 12(b)(2). "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the party asserting jurisdiction is required to present facts sufficient to constitute a *prima facie* case of personal jurisdiction to satisfy its burden." Duke Energy Int'l, L.L.C. v. Napoli, 748 F. Supp. 2d 656, 678 (S.D. Tex. 2010) (citing Central Freight Lines Inc. v. APA Transport Corp., 322 F.3d 376, 380 (5th Cir. 2003); Alpine View Co. v. Atlas Copco A.B., 205 F.3d 208, 214 (5th Cir. 2000)). "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990).

## III. Analysis

The undersigned finds this court has specific personal jurisdiction over the Burnett Defendants. Absent a statute that permits nationwide service of process, when a suit is based on a federal statute, the court looks to the long-arm statute of the state in which it sits to determine whether a defendant is subject to personal jurisdiction. Omni Capital Intern., Ltd. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 105 (1987). The Texas long-arm statute confers jurisdiction to the limits of the federal constitution. Companion Prop. & Cas. Ins. Co. v. Palermo, 723 F.3d 557, 559 (5th Cir. 2013). Therefore, the undersigned's focus is whether the exercise of personal jurisdiction offends or satisfies constitutional requirements of due process.

In order to satisfy due process, the Burnett Defendants must have "certain minimum contacts with [Texas] such that the maintenance of the suit does not offend traditional notions of

fair play and substantial justice." Parker v. Pro W. Contractors, L.L.C., No. 13-30142, 2013 WL 3534082, at *1 (5th Cir. July 15, 2013) (citing Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945)). "The minimum contacts requirement is satisfied by either: (1) contacts that give rise to general personal jurisdiction or (2) contacts that give rise to specific personal jurisdiction." Id. (citing Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994)). Because the Plaintiffs do not argue minimum contacts are satisfied through general personal jurisdiction, the undersigned will focus only on whether the Burnett Defendants have sufficient contacts that give rise to specific personal jurisdiction.

"Specific jurisdiction is proper where the defendant has 'purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Parker, 2013 WL 3534082, at *1 (5th Cir. July 15, 2013) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)); see also Electrosource, Inc. v. Horizon Battery Techs. Ltd., 176 F.3d 867, 871 (5th Cir. 1999) (litigation must arise out of or relate to activities purposefully directed at residents of the forum). "The constitutional requirement for specific jurisdiction is that the defendant has 'minimum contacts' with the forum state such that imposing a judgment would not 'offend traditional notions of fair play and substantial justice.'" Stroman Realty, Inc. v. Wercinski, 513 F.3d 476, 484 (5th Cir. 2008) (quoting Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945)).

*A. Minimum Contacts*

**1. The Complaint**

In the complaint, the Plaintiffs alleged that Signal authorized Pol, Dewan, and Burnett to act as their agents for the purposes of recruiting and providing Indian welders and fitters to fill

anticipated H-2B guest worker jobs at Signal's Orange, Texas operations. (Doc. No. 1, p. 13.) Acting as Signal's agents, Burnett then entered into contracts with the Plaintiffs in which they promised: (1) the Plaintiffs would work under a permanent resident (green card) program, and (2) the Plaintiffs would promptly receive a refund of all or nearly all of their payments if the Defendants did not succeed in securing green cards for Plaintiffs. (Id., p. 18.) However, Burnett had no intention of, and did not apply for or assist the Plaintiffs in obtaining permanent residency for themselves or their families. (Id., p. 7.) Furthermore, Burnett did not refund the fees the Plaintiffs paid in reliance on Burnett's false promises. (Id.) The Plaintiffs further allege that "at all relevant times, Burnett had an attorney-client relationship with each Plaintiff for purposes of immigration issues and Plaintiffs' work for Signal." (Id., p. 24.) However, once they were in Signal's facility, the Plaintiffs were not allowed to speak or meet with Burnett. (Id.) Furthermore, when the Plaintiffs did try to contract Burnett, their calls were not returned. (Id.) As a result, the Plaintiffs continued to work at Signal under the false premise that Burnett was working to secure permanent residency for them.

The Plaintiffs have satisfied the minimum contacts requirement by alleging the Burnett Defendants committed acts outside of Texas that caused tortious injuries within Texas. The Fifth Circuit has held that sufficient minimum contacts are established "[w]hen a nonresident defendant commits a tort within the state, *or an act outside the state that causes tortious injury within the state*." Guidry v. United States Tobacco Co., 188 F.3d 619, 628 (5th Cir. 1999) (collecting cases). "Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." Id. (collecting cases). An individual injured in Texas "need not go to

[another jurisdiction] to seek redress from persons who, though remaining in other states, intentionally, knowingly and recklessly caused severe physical, emotional and economic injuries to the plaintiffs and others" in Texas. Id. at 630. Based upon the complaint, the Plaintiffs have established that the Burnett Defendants have sufficient minimum contacts with Texas because the alleged tortious acts committed by the Burnett Defendants, even if most were committed outside of Texas, caused tortious injuries within Texas. The Burnett Defendants, who allegedly conspired with Signal to lure the Plaintiffs to Orange, Texas with false promises, and who continued to deceive the Plaintiffs once they arrived in Texas by refusing to speak with them and not fulfill their promises, cannot credibly argue that they could not reasonably have anticipated being sued in this District.

**2. The Burnett Deposition, Affidavit and Letter**[2]

In his deposition (Doc. No. 43, Exh. A) Burnett stated as follows:

> I would give the workers their documents and make sure, you know, that all the – you know, the visas, the applications, the experience letters, resumes . . . where in the proper order. [I] would go through a litany of information to provide to the workers, you know, and it basically went along these lines: You know, where you're working, know your occupation, know your rate of pay, know whether you're going to be working in Texas or Pascagoula.

In response to the Plaintiff's attorney asking Burnett if he assisted Signal in filing Employment and Training Administration ("ETA") 750 applications in Mississippi for the workers that were being moved from Texas to Mississippi, Burnett stated: "You know, I—unless they got someone else to do it, I'm pretty sure I did it." (Doc. No. 43, Exh. B.) Burnett also

2. "In resolving a Rule 12(b)(2) motion, the Court may consider 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."' Allstate Ins. Co. v. Interline Brands, Inc., No. 3:13-cv-946-B, 2014 WL 462814, at *3 (N.D. Tex. Feb. 5, 2014) (quoting Stuart v. Spademan, 772 F.2d 1185, 1192 (5th Cir.1985)).

states in his affidavit that he visited Signal's Texas facility at least once in 2007 "in response to a request by Signal to generally discuss with the Texas Plant manager the overall status and employment of the non-immigrant workers who had been initially deployed to Signal's facility in Texas." (Doc. No. 36, Exh. 1., p. 2.) Furthermore, the Plaintiffs have attached as an exhibit to their response, a letter Burnett wrote to the Texas Workforce Commission in which he included an Application for Alien Employment Certification. (Doc. No. 43, Exh. E.) In this application, Burnett wrote that "110 unnamed welders" would be working in Orange, Texas. (Id.)

This evidence establishes Burnett "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." Parker, 2013 WL 3534082, at *1 (5th Cir. July 15, 2013). Burnett knew the Plaintiffs would be working in Pascagoula, Mississippi or Orange, Texas, and he visited Texas on at least one occasion to discuss the status of the workers. Burnett also submitted an Application for Employment Certification with the Texas Workforce Commission to get approval for Signal to hire "110 unnamed welders" for its Orange, Texas facility. In summary, Burnett "provided legal services for clients in Texas and he knew that those legal services were used to obtain workers for the man camp in Texas." (Doc. No. 43, p. 9.)

*B. Traditional Notions of Fair Play and Substantial Justice*

The undersigned also finds it will not "offend traditional notions of fair play and substantial justice" for this court to exercise personal jurisdiction over the Burnett Defendants. The Fifth Circuit has used the following test to assess the reasonableness of a court's exercise of personal jurisdiction: "(1) the burden upon the nonresident defendant to litigate in that forum; (2) the forum state's interests in the matter; (3) the plaintiff's interest in securing relief; (4) the

interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the several states' shared interest in furthering substantive social policies." Stroman Realty, Inc. v. Wercinski, 513 F.3d 476, 487 (5th Cir. 2008) (citing Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 113 (1987)). First, the Burnett Defendants will not face a large burden in litigating the instant case in this District, because the Burnett Defendants, who consist of a single attorney and two "inactive" companies, are located in Louisiana, which is contiguous to Texas. Second, the forum state, Texas, does have an interest in the matter because the Plaintiffs were allegedly injured while working at Signal's Orange, Texas facility. Third, keeping the Burnett Defendants claims in this District will provide the most efficient resolution of this case. Notwithstanding their status as putative class members, the Plaintiffs have already moved their case once from a different federal district court after their motion for class certification was denied. David v. Signal Int'l, LLC, Civ. A. No. 08-1220, 2012 U.S. Dist. LEXIS 114247, at *129 (E.D. La. Jan. 3, 2012). The most expeditious option at this point would be to continue this case in this District. Finally, the Burnett Defendants have not pointed out any clashes between the substantive social policies of Texas and any other potential forum state in regards to this case. There is no reason to believe that the State of Texas and the other potential forum state have different levels of interest in or conflicting views on the social issues pervading this case. Taking these factors into consideration, the undersigned finds that traditional notions of fair play and substantial justice will not be offended by exercising personal jurisdiction over the Burnett Defendants.

In summary, the undersigned finds the Plaintiffs have established a *prima facie* case that this court has personal jurisdiction over the Burnett Defendants by showing 1) the Burnett Defendants have sufficient minimum contacts with Texas; and 2) it will not offend traditional

notions of fair play and substantial justice for this court to exercise personal jurisdiction over the Burnett Defendants.

## IV. Recommendation

For the reasons stated above, the "Motion and Memorandum in Support of Motion of Malvern C. Burnett, the Law Offices of Malvern C. Burnett, A.P.C., and Gulf Coast Immigration Law Center, L.L.C. to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2)" (Doc. No. 36) should be **DENIED**.

## V. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c) (Supp. IV 2011), each party to this action has the right to file objections to this report and recommendation. Objections to this report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. See 28 U.S.C. § 636(b)(1)(c); FED R. CIV. P. 72(b)(2). A party who objects to this report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. See 28 U.S.C. § 636(b)(1)(c); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, see Rodriguez v. Bowen, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any

such findings of fact and conclusions of law accepted by the United States District Judge, see Douglass v. United Serv. Auto. Ass'n., 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 1st day of August, 2014.

Zack Hawthorn
United States Magistrate Judge