**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **SATHEESH MARIMUTHU** *et al.* | § § | |
| v. | § § | NO. 1:13-CV-499 |
| **SIGNAL INTERNATIONAL L.L.C.** *et al* | § | |

### REPORT AND RECOMMENDATION GRANTING IN PART THE BURNETT DEFENDANTS' MOTION TO DISMISS (DOC. NO. 38)

This case is assigned to the Honorable Marcia A. Crone, United States District Judge, and is referred to the undersigned United States Magistrate Judge for all pretrial matters. Before the undersigned is a "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" filed by Malvern C. Burnett, the Law Offices of Malvern C. Burnett, A.P.C., and Gulf Coast Immigration Law Center, L.L.C. (hereinafter referred to interchangeably as "Burnett" and "the Burnett Defendants"). (Doc. No. 38.) The undersigned has considered the pending motion and the corresponding response. (Doc. No. 42.) The Burnett Defendants' motion should be granted in part as to the Plaintiffs' Ku Klux Klan Act claim because the Plaintiffs failed to allege Burnett was motivated by racial animus. The motion to dismiss should also be granted as to the state law claims on the grounds that the complaint fails to adequately allege the conduct underlying those claims occurred in Texas. However, the Plaintiffs shall have leave to amend their complaint as to KKKA and state law claims. Burnett's motion should be denied in every other respect because the Plaintiffs sufficiently stated a TVPA claim upon which relief can be granted, and a motion for summary judgment is the proper vehicle to prove the Plaintiffs state law claims are barred by the statute of limitations.

## I. Background

*A. Procedural Background*

On March 7, 2008, twelve individuals who were allegedly trafficked into the United States filed a putative class action against the Defendants in the Eastern District of Louisiana. See David v. Signal Int'l, LLC, Civ. A. No. 08-1220 (E.D. La.). That Court denied class certification;[1] and, as a result of this ruling, the Plaintiffs in the instant action filed suit in this District, where they were allegedly subjected to deplorable working conditions at Signal's Orange, Texas facilities. (Doc. No. 1.) On August 7, 2013, the Plaintiffs filed their original complaint in this court against the following Defendants: Burnett, Signal International, L.L.C., Signal International, Inc., Signal International Texas, G.P., Signal International Texas, L.P. (hereinafter referred to as "Signal"), Global Resources, Inc., Sachin Dewan, and Dewan Consultants Pvt. Ltd. Subsequently, the Burnett Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 38.)

*B. Factual Background*

In the aftermath of Hurricane Katrina, approximately 590 men, including the Plaintiffs, were allegedly trafficked into the United States through the federal government's H-2B guest worker program to provide labor and services to the Signal Defendants. (Doc. No. 1.) The Plaintiffs claim they were lured to work for Signal through the fraudulent promise of legal and permanent work-based immigration to the United States for themselves and their families. (Id., p. 4.) Subsequently, after coming to the United States, the Plaintiffs were allegedly subjected to forced labor and other serious abuses at Signal operations in Orange, Texas. (Id.)

---

1. David v. Signal Int'l, LLC, Civ. A. No. 08-1220, 2012 U.S. Dist. LEXIS 114247, at *129 (E.D. La. Jan. 3, 2012).

The Burnett Defendants consist of Malvern C. Burnett and his two corporations: Gulf Coast Immigration Law Center, L.L.C. and Law Offices of Malvern C. Burnett, A.P.C. The Plaintiffs accuse Burnett of conspiring with Signal and other Defendants to recruit Indian welders and pipefitters to fill anticipated H-2B guest worker jobs at Signal's Orange, Texas operations with false promises of permanent residency in the United States for the workers and their families.  (Id.)

## II.  Jurisdiction

The Plaintiffs seek recovery pursuant to several federal statutes.  For actions brought under these statutory provisions, the court has subject-matter jurisdiction predicated upon federal question jurisdiction.  See 28 U.S.C. § 1331; 29 U.S.C. § 216(b).  For the state law causes of action, the court has subject-matter jurisdiction predicated upon supplemental jurisdiction.  See 28 U.S.C. § 1367(a).  Venue is proper because the events giving rise to the above claims occurred within the confines of this District.  See 28 U.S.C. § 1391.

## III.  Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted."  Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009).  When a court analyzes a Rule 12(b)(6) motion, it "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Beaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).  A court should grant such a motion only when the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

### IV. Analysis

The Plaintiffs allege Burnett violated the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §§ 1589, 1590 ("TVPRA") and the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3) ("KKKA"). (Doc. No. 1.) The Plaintiffs have also asserted state law claims of fraud, negligent misrepresentation, and breach of contract. (Id.) First, Burnett argues the Plaintiffs have failed to provide sufficient facts to state any claim. (Doc. No. 38.) Second, Burnett states that the laws of Texas could not apply to the state law claims because the underlying facts used to support the state law claims occurred in India or the United Arab Emirates. Third, Burnett asserts the Plaintiffs' state law claims are barred by the statute of limitations. (Id.)

*A. Federal Claims*

Burnett generally argues the Plaintiffs failed to state more than mere conclusions and recitals of statutory language without any basis in fact in their complaint. In particular, Burnett argues that the Plaintiffs only allege in a conclusory fashion that Burnett violated the KKKA and the TVPRA.

**1. Ku Klux Klan Act 1871**

The four elements a plaintiff must allege to state a cause of action under the KKKA, 42 U.S.C. § 1985(3), are as follows: "(1) the defendants must conspire; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) the defendants must act in

furtherance of the object of the conspiracy, whereby (4) one was (a) injured in his person or property or (b) deprived of having and exercising any right or privilege of a citizen of the United States." McLellan v. Mississippi Power & Light Co., 545 F.2d 919, 923 (5th Cir. 1977). "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). In their complaint, the Plaintiffs allege that the Burnett Defendants "conspired, agreed, planned and coordinated for, and acted in furtherance of, the purpose of depriving Plaintiffs of equal protection of their rights under the Thirteenth Amendment." (Doc. No. 1, p. 71.) The Plaintiffs further state that the Burnett Defendants were "motivated by racial, anti-Indian, and/or anti-immigrant animus when they conspired to deprive Plaintiffs of their rights and acted in furtherance of a conspiracy to deprive Plaintiffs of their rights." (Id.) The undersigned agrees with Burnett that the Plaintiffs have only alleged the elements of a claim under the KKKA. Nowhere in the complaint have the Plaintiffs pled any facts or factual content that Burnett was motivated by racial animus to deprive the Plaintiffs of their right to equal protection under the law. Therefore, the undersigned recommends granting Burnett's motion to dismiss as it relates to the Plaintiff's KKKA claims against Burnett. The Plaintiffs will be granted leave to amend their complaint within seven (7) days of the date the district court adopts this report and recommendation, if the district court does so. [2]

### 2. Trafficking Victims Protection Reauthorization Act

The forced labor provision of the TVPRA (18 U.S.C. § 1589), provides that:

---

[2]. See Texas Indigenous Council v. Simpkins, 544 F. App'x 418, 421 (5th Cir. 2013) ("Granting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim. Permission should be denied only if it appears to a certainty that plaintiffs cannot state a claim showing they are entitled to relief or defendant will be unduly prejudiced.") (citations omitted).

> (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means--
>> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>> (2) by means of serious harm or threats of serious harm to that person or another person;
>> *(3) by means of the abuse or threatened abuse of law or legal process*; or
>> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,
>
> shall be punished as provided under subsection (d).
>
> (c) In this section:
>> (1) The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

The Plaintiffs have alleged Burnett knowingly obtained the Plaintiffs' labor by using the legal process in a way it was not designed in order to induce the Plaintiffs to move to the United States to work for Signal. See 18 U.S.C. § 1589(a)(3). The Plaintiffs allege Burnett acted as Signal's agent for the "purposes of recruiting and providing Indian welders and fitters to fill anticipated H-2B guest worker jobs at Signal's Orange, Texas operations." (Doc. No. 1, p. 15.) Allegedly, Burnett falsely promised the Plaintiffs that: "(1) they would be eligible for permanent residency through their employment with Signal; (2) Defendants would apply for permanent residency in the United States on behalf of Plaintiffs; (3) Defendants would extend Plaintiffs' H-2B visas while they were being processed for permanent residency; and (4) Plaintiffs would have steady and ongoing work opportunities in the United States with Signal." (Id., p. 72.) Burnett allegedly made these false statements in order to recruit the Plaintiffs to travel to the

United States to work for Signal. (Id., p. 73.) Reasonably relying on these promises, the Plaintiffs signed green card contracts, paid the required fees, and prepared to travel to Signal's facilities. (Id., p. 18.)

In approving the Plaintiffs' H-2B visa petitions, the United States Citizenship and Immigration Service "relied on the accuracy of the petitions' stated 10-month period of labor need and the representation that Signal's need was based on a one-time, peak-load, temporary demand." (Id., p. 19.) The Defendants "knew that the stated period of need in Signal's applications for labor certifications and for H-2B visas were inconsistent with Signal's promises of permanent residency to Plaintiffs and its actual projected labor need and, therefore, Defendants knew these statements to the government were false." Id. Finally, the Plaintiffs allege Burnett elicited payment from the Plaintiffs for the H-2B visas that were procured by making false statements to the federal government. (Id., p. 20.)

Once the Plaintiffs arrived at the Texas Labor camp, "[a]t various times, Signal refused to confirm whether it had obtained visa extensions for Plaintiffs." (Id., p. 32.) Faced with crushing debt—a result of the recruitment and legal fees paid to the Defendants (including Burnett)—and the threat of deportation should they complain, the Plaintiffs "felt compelled to continue working for Signal despite the dreadful conditions at the Texas Labor Camp." (Id., p. 6.) Despite repeated representations that Burnett was each Plaintiff's lawyer for immigration purposes, they were generally not allowed to speak or meet with him. (Id., p. 25.) In an e-mail Burnett sent to another Defendant, he speculated about whether he should threaten his clients with immediate deportation to prevent them from stopping payments on his legal fees. (Id., p. 25.)

Burnett abused the legal process by using the temporary H2-B visa process in a way it

was not intended in order to lure the Plaintiffs into working for Signal. The H2-B visa process is only meant to bring workers to the United States temporarily and not as a pathway to legal residency. However, Burnett used the visa as a way to induce the Plaintiffs to the United States to work for Signal under the guise that Burnett would later apply for green cards, and a visa extension if necessary, which according to the complaint, was never Burnett's intention. (Id., p. 18.) Burnett also allegedly abused the legal process by exacting fees for obtaining the H2-B visas which were obtained by making false statements to the federal government. The undersigned finds that these allegations are sufficient to state a plausible TVPRA claim.

B. State Law Claims

    1. **Extraterritorial Conduct**

In cursory fashion, Burnett argues without citing any authority, that "all of the alleged conduct that is asserted as support of the state based causes of action occurred in India or the United Arab Emirates"; and, therefore, only Indian or "Arabian" law applies to the instant case. (Doc. No. 38, p. 15.) Burnett also posits that "given the totality of the allegations, and the very few factual assertions of conduct by Burnett, it is submitted that there was no actionable conduct by Burnett under either country's laws."

First, the undersigned finds that Burnett has failed to provide any legal support that under Indian or United Arab Emirates law, Burnett's conduct is not "actionable." "The district court is not required to conduct its own research into the content of foreign law if the party urging its application declines to do so." Mutual Service Ins. Co. v. Frit Industries, Inc., 358 F.3d 1312, 1321 (11th Cir. 2004). The undersigned simply will not trust Burnett's "submission" that Burnett's alleged conduct is not actionable under those countries' laws.

However, Burnett's point that the conduct used to support the state law claims appears to

have only occurred abroad is well-taken. In reviewing the complaint, the Plaintiffs adequately allege their state law claims of fraud, negligent misrepresentation and breach of contract, but it is unclear if any of Burnett's alleged conduct used to support the claims occurred in Texas. The Plaintiffs only mention that after they arrived in Texas, Burnett "quelled" organizing efforts and refused to meet with the Plaintiffs to provide legal advice. (Doc. No. 42, p. 6.) Those allegations alone are simply insufficient to support the above state law claims. The Plaintiffs also ask the court to cross-reference their briefing that responded to *Signal's* contentions that their alleged conduct only occurred abroad. (Id., p. 2, n.2.) While it is true that the instant complaint is replete with allegations that *Signal* committed the state law torts in Texas, the same cannot be said for Burnett. Accordingly, the undersigned recommends granting Burnett's motion to dismiss the Plaintiff's state law claims on this basis. The Plaintiffs will be granted leave to amend their complaint within seven (7) days of the date the district court adopts this report and recommendation, if the district court does so.

### 2. Fraud and Negligent Misrepresentation[3]

Burnett also claims the Plaintiffs' complaint only states "legal conclusions" in relation to the pendent state law claims. However, the undersigned finds the Plaintiffs have provided sufficient facts to support their argument that Burnett is liable for fraud and negligent misrepresentation. Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." In their complaint, the Plaintiffs allege Burnett knowingly and negligently made the following materially false promises to the

---

3. The undersigned recognizes that dismissal has already been recommended on the Plaintiffs' state law claims on the grounds that the complaint fails to adequately allege the conduct underlying those claims occurred in Texas. However, because the undersigned recommends giving the Plaintiffs an opportunity to amend their complaint, this report will also address Burnett's alternate alternative for dismissing the Plaintiff's state law claims.

Plaintiffs: "(1) they would be eligible for permanent residency through their employment with Signal; (2) Defendants would apply for permanent residency in the United States on behalf of Plaintiffs; (3) Defendants would extend Plaintiffs' H-2B visas while they were being processed for permanent residency; and (4) Plaintiffs would have steady and ongoing work opportunities in the United States with Signal." (Doc. No. 1, p. 72.) "Defendants and/or their respective agents also made false representations regarding the living conditions at the Texas Labor Camp." (Id.) In reliance on Burnett's promises, the Plaintiffs: 1) paid large sums of money to Burnett, which directly benefitted Signal in the form of cheap labor and increased profits; 2) incurred substantial interest-bearing debts in order to pay recruitment, immigration-related, and travel fees charged by Defendants and their agents, employees and/or representatives; 3) sold personal and real property and surrendered employment opportunities in India, Singapore, and/or the United Arab Emirates; and 4) left their homes and jobs and India and other countries and traveled to the United States to work for Defendant Signal. (Id. pp. 73-74.) The Plaintiffs further allege Burnett knew, or should have known, the Plaintiffs would have induced the Plaintiffs to take these steps. (Id.) Given these allegations, the undersigned finds that the Plaintiffs have met the 12(b)(6) pleading standard and recommends denying the Defendants' motion to dismiss this claim.

### 3. Breach of Contract

Burnett generally states the Plaintiffs failed to allege facts to support their breach of contract claim. (Doc. No. 38, p. 7.) However, the Plaintiffs allege they entered into valid contracts with Burnett under which they would pay fees to Burnett in exchange for his promise to provide them with lawful employment and work-authorized green cards enabling them to permanently and legally reside in the United States with their families. (Doc. No. 1, p. 74.)

Burnett allegedly breached this contract by not fulfilling those promises and refusing to refund the fees the Plaintiffs paid him.  (Id., p. 7.)   Accordingly, the undersigned recommends denying dismissal of this claim.

### 4. Statute of Limitations

The Burnett Defendants also assert that the Plaintiffs' pendent state law claims are time barred by the statute of limitations.  Burnett argues the statute of limitations on the state law claims began to run, at the latest, a year and a half after each Plaintiff's arrival because "less than a year-and-a-half after coming to the Texas Labor Camp, Plaintiffs were either terminated or told they were being sent to work at the Pascagoula, Mississippi facility for lower wages."  (Doc. No. 38, p. 13.)   Burnett submits that most of the Plaintiffs arrived in December 2006, while four arrived February 2007; and, therefore the statute of limitations would have commenced no later than August 2008.  (Id.)   Although Burnett does not catalogue the statute of limitations for each pendent state law claim under Texas law, he claims they would expire, at the latest, in four years—2012.  The complaint in the instant case was filed in 2013.  Burnett also argues the federal class action filed in the *David* court, which was not certified, did not toll the running of the statute of limitations on the state law claims.

In response, the Plaintiffs argue the *David* Court noted in an Order that Burnett consented to the tolling of the state-law claims.  (Doc. No. 42, p. 15.)  In the alternative, they argue Texas law supports the tolling of the statute of limitations as to all purported members of a class upon the filing of the class action.  (Id., p. 16.)

The *David* complaint was filed on March 7, 2008.  (Doc. No. 37, Exh. 1.)  United States District Judge Jay Zainey, *upon the consent of Signal and the Burnett Defendants*, entered an order tolling the statute of limitations for the absent class members' (who are the Plaintiffs in

this case) state law claims for 120 days until after the court's final ruling on class certification. Order, Kurian David et al. v. Signal International, L.L.C., et al., No. 2:08-cv-1220 (E.D. La. Jan. 20, 2011) (Doc. No. 982). Judge Zainey entered an order denying class certification on January 4, 2012, making the expiration of the tolling period May 3, 2012. Order and Reasons, *David*, No. 2:08-cv-1220 (Doc. No. 1117). The case was subsequently transferred to United States District Judge Susie Morgan. Order Reassigning Case, David, No. 2:08-cv-1220 (Doc. No. 1157). Over Signal's objections, Judge Morgan further tolled the statute of limitations for the Plaintiffs' claims until August 28, 2013. Order and Reasons, David, No. 2:08-cv-1220 (Doc. No. 1379). However, pursuant to Burnett's request, Judge Morgan clarified that prior order by stating it only tolled the limitations period for the *federal* law claims, not any state law claims. Order and Reasons, David, No. 2:08-cv-1220 (Doc. No. 1417).

For a Rule 12(b)(6) motion, a court is typically not to look beyond the complaint. However, a court may consider attachments to briefing regarding a motion to dismiss if the documents are referenced in the complaint, central to the complaint, referenced by the parties, and their authenticity is not in dispute. See Walch v. Adjutant Gen. Dep't, 533 F.3d 289, 293–94 (5th Cir. 2008) (citing *In re* Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)); Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004). Those are the only documents the undersigned should consider in deciding the motion to dismiss as it concerns the limitations issue—not the various court orders entered by the New Orleans district courts tolling state statutes of limitations for the pendent state law claims.[4]

Nevertheless, even if the undersigned were to consider and apply Judge Zainey's tolling

---

[4]. Burnett did not address the tolling orders entered by the *David* court, and the Plaintiffs only mentioned Judge Zainey's order, not Judge Morgan's orders. It should be noted that the briefing on the instant motion occurred *after* all of the *David* tolling orders had been entered.

order from the date the *David* complaint was filed until its expiration, the undersigned would still need to go outside the pleadings to intelligently determine the appropriate accrual date for the various state law claims and what effect the tolling period from Judge Zainey's order has on the timeliness of the pendent state law claims filed in the instant complaint.[5]  Pursuant to Federal Rule of Civil Procedure 12(d), "if on a motion under Rule 12(b)(6) matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56, and all parties must be given a reasonable opportunity to present material that is pertinent to the motion."  Accordingly, to the extent the Burnett Defendants believe the Plaintiffs' state law claims are still barred by the statute of limitations in light of Judge Zainey's tolling order, that is a matter best addressed in a motion for summary judgment, after the parties have had an opportunity for full discovery and the court can consider evidence outside the pleadings.

## V. Recommendation

For the reasons stated above, the Burnett Defendants' "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 38) should be granted as to the Plaintiffs' Ku Klux Klan Act claim and state law claims of negligent misrepresentation, fraud and breach of contract. However, the Plaintiffs should be given leave to amend these claims.  See Texas Indigenous Council, 544 F. App'x at 421.  Should the Plaintiffs choose to do so, they shall amend the complaint within seven (7) days of the date in which the district court adopts this report and recommendation if applicable.  Id.  The motion should be denied as to the other claims

---

5. Burnett cites Bell v. Showa Denko K.K., 899 S.W.2d 749 (Tex. App.—Amarillo 1995, writ denied) in support of their argument that Texas courts hold the filing of a proposed federal class action does not toll the limitations period on pendent state law claims.  See also Newby v. Enron Corp., 542 F.3d 463 (5th Cir. 2008).  In those cases, it does not appear the Defendants consented to the tolling of the statute of limitations, as the Burnett Defendants did here, at least for the period of time reflected in Judge Zainey's order.  As such, those cases appear to be inapposite.

asserted by the Plaintiffs, subject to reconsideration in a motion for summary judgment that the state law claims are barred by the statute of limitations.

## VI. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c) (Supp. IV 2011), each party to this action has the right to file objections to this report and recommendation. Objections to this report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. See 28 U.S.C. § 636(b)(1)(c); Fed R. Civ. P. 72(b)(2). A party who objects to this report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. See 28 U.S.C. § 636(b)(1)(c); Fed R. Civ. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, see Rodriguez v. Bowen, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge, see Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 12th day of August, 2014.

_____
Zack Hawthorn
United States Magistrate Judge