IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| SATHEESH MARIMUTHU, *et al.* | § § | |
| v. | § § | NO. 1:13-CV-499 |
| SIGNAL INTERNATIONAL L.L.C., *et al.* | § | |

### REPORT AND RECOMMENDATION ON BURNETT'S MOTION TO DISMISS (DOC. NO. 77)

This case is assigned to the Honorable Marcia A. Crone, United States District Judge, and is referred to the undersigned United States Magistrate Judge for all pretrial matters. (Doc. No. 4.) Pending before the undersigned is the "Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6)" (Doc. No. 77) filed by Malvern C. Burnett, the Law Offices of Malvern C. Burnett, A.P.C., and the Gulf Coast Immigration Law Center, L.L.C. (collectively, "Burnett"). Burnett seeks dismissal of the Plaintiffs' Ku Klux Klan Act of 1871 ("KKKA") and state-law claims. The undersigned, after considering Burnett's motion, the Plaintiffs' response (Doc. No. 79), the amended complaint (Doc. No. 76), and applicable authorities, finds that the Plaintiffs have adequately pled their KKKA and state-law claims. Accordingly, the undersigned recommends that Burnett's motion be denied.

### I. Background

In the aftermath of Hurricane Katrina, approximately 590 men, including the ten Plaintiffs in this case, were allegedly trafficked into the United States to provide labor for Signal's operations. (Doc. No. 76, pp. 1–8.) The Plaintiffs claim that the Defendants made "false promises of assistance in applying for and obtaining permanent residence in the United States," as well as "bilked Plaintiffs out of tens of thousands of dollars in 'recruitment fees' (for

which Plaintiffs assumed massive debts) . . . [and] forced them to live in squalid conditions in a gated, guarded, isolated labor camp . . . ." (Id. at p. 2.)

A putative class action was filed in the Eastern District of Louisiana on behalf of all the workers who had allegedly been trafficked to the United States to work at Signal's facilities in Texas, Louisiana, and Mississippi. (See Doc. 1, David v. Signal Int'l, L.L.C., 2:08-cv-1220 (March 7, 2008)). The court in *David* denied class certification, which caused the individual class members to file suit where their alleged injuries occurred. See David v. Signal Int'l, L.L.C., No 08-1220, 2012 WL 10759668, at *37 (E.D. La. Jan. 4, 2012). The Plaintiffs in this case worked at Signal's facility in Orange, Texas, which is within this judicial district.

The Plaintiffs are suing Burnett, as well as Signal International L.L.C., Signal International, Inc., Signal International Texas, G.P., Signal International Texas, L.P., Global Resources, Inc., Sachin Dewan, and Dewan Consultants Pvt. Ltd. (a/k/a Medtech Consultants). The Plaintiffs allege that some or all of the Defendants violated the following federal statutes: (1) the Trafficking Victims Protection Reauthorization Act of 2003; (2) the Civil Rights Act of 1866; and (3) the Ku Klux Klan Act of 1871. (Doc. No. 76, pp. 71–77.) In addition, the Plaintiffs assert causes of action for state-law fraud, negligent misrepresentation, and breach of contract against all of the Defendants. (Id.)

On February 22, 2014, Burnett moved to dismiss all of the Plaintiffs' claims, arguing that they had failed to state a claim upon which relief could be granted. (Doc. No. 38.) The undersigned recommended granting Burnett's motion in part. (Doc. No. 64.) Specifically, the undersigned found that there were insufficient factual allegations to support a claim under the KKKA, and that the Plaintiffs' state-law claims were deficient, but that the remainder of the Plaintiffs' claims were adequately pled. (Id.) The undersigned also recommended that the

Plaintiffs be given an opportunity to amend their complaint. The District Court adopted the undersigned's recommendations. (Doc. No. 69.) The Plaintiffs then filed an amended complaint, and Burnett again sought to dismiss the Plaintiffs' KKKA and state-law claims.

## II. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009). When a court analyzes a Rule 12(b)(6) motion, it "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)). A court should grant such a motion only when the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## III. Analysis

Burnett seeks to dismiss the Plaintiffs' KKKA and state-law claims.[1] Burnett argues that the Plaintiffs' KKKA claim should be dismissed because they failed to plead any facts showing that there was a conspiracy or that Burnett was motivated by racial animus. As to the Plaintiffs'

---

1. Burnett, "so as to not be deemed to have waived his assertions that Plaintiffs have failed to state a cause of action on which relief can be based . . . reaffirms and reasserts that Plaintiffs have failed to state a claim for human trafficking against him upon which relief can be granted." (Doc. No. 77, p. 2.) However, having already found that the Plaintiffs stated a claim for human trafficking, the focus of Burnett's current motion is only the claims that were previously dismissed.

state-law claims, Burnett claims that dismissal is warranted because the Plaintiffs' amended complaint again fails to demonstrate that the conduct supporting the state-law claims occurred in Texas. Burnett also reasserts that the Plaintiffs' state-law claims are barred by the statute of limitations.

### A. Ku Klux Klan Act of 1871 (42 U.S.C. § 1985(3))

"To state a claim under §1985(3), [the plaintiff] must allege that two or more persons conspired directly, or indirectly, to deprive him of the equal protection of the laws or equal privileges and immunities under the laws." Green v. State Bar of Tex., 27 F.3d 1083, 1089 (5th Cir. 1994). In addition, "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Burnett argues that the Plaintiffs have failed to plead facts showing that there was a conspiracy or that there was any racial animus.

First, Burnett claims that the Plaintiffs have "not pled any facts that support a conclusion that [he] conspired with any other Defendants to deprive these Plaintiffs of their right to be free from involuntary servitude." (Doc. No. 77, pp. 6–7.) "Fifth Circuit precedent [holds] that specific facts must be pled when a conspiracy is alleged; mere conclusory allegations will not suffice. In pleading these specific facts, the Plaintiff must allege the operative facts of the alleged conspiracy." Williams v. Thompson, No. 5:11-cv-68, 2012 WL 651650, at *11 (E.D. Tex. Jan 26, 2012) (Craven, Mag. J.) (discussing the sufficiency of a KKKA claim). Here, the Plaintiffs have put forth sufficient facts to plead a plausible claim of conspiracy. For example, the Plaintiffs allege that there were contractual relationships between Burnett and his co-conspirators, and that Burnett had attorney-client relationships with several of the Defendants.

4

(See Doc. No. 79) (discussing examples of Burnett's relationships that are further detailed in the amended complaint). Moreover, the Plaintiffs allege that Burnett played an integral role in the overall conspiracy to bring the Plaintiffs to the United States and keep them in a condition of involuntary servitude by processing the Plaintiffs' immigration related documents while at the same time supposedly knowing of the allegedly false promises made by his co-conspirators. (Doc. No. 76, pp. 24–26.) These factual allegations are sufficient to create a plausible claim that all the Defendants were working in concert to further the goals of the conspiracy.

Not every conspiracy, however, is actionable under the KKKA. Rather, the KKKA only reaches conspiracies that deprive another of certain rights. See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 278 (1993). The right at issue in this case is the right to be free from involuntary servitude. Burnett claims that the only fact pled showing that there was a conspiracy to deprive the Plaintiffs of the right to be from involuntary servitude is the allegation that Burnett was present at a meeting where the Plaintiffs were threatened with deportation. Threats of deportation have been held to support a claim of involuntary servitude. Kiwanuka v. Bakilana, 844 F. Supp. 2d 107, 115 (D.D.C. 2012) (collecting cases). While Burnett denies being at this meeting, that is a fact issue that is not proper for resolution on a motion to dismiss. The allegation that Burnett was a participant is sufficient to tie Burnett to the conspiracy to deprive the Plaintiffs of their right to be free from involuntary servitude. Accordingly, after taking all the facts in the Plaintiffs' amended complaint as true, it is plausible that Burnett was part of a conspiracy in violation of the KKKA.

As to whether the Plaintiffs have sufficiently alleged racial animus, Burnett argues that the Plaintiffs' "Amended Complaint did not change or add anything new or different from their original Complaint, which this Court determined failed to plead facts in support of its conclusory

allegations." (Doc. No. 77, p. 4.) Burnett points to paragraph 396 of the Plaintiffs' amended complaint as support. While this paragraph of the Plaintiffs' amended complaint is identical to one in their original complaint, Burnett overlooks the numerous new factual allegations in the prior paragraphs of the Plaintiffs' amended complaint that supports their claim of racial animus. (See Doc. No. 79, p. 10) (noting that the amended complaint contains "no less than 23 amendments relating to racial and anti-immigrant animus . . ."). In sum, the Plaintiffs allege that Burnett actively worked against their interests, that he did so *because* they were Indian, and even go so far as to include certain racist comments made by Burnett, which supports an inference that he was motived by racial animus. This is enough to move the Plaintiffs' claim from "possible" to "plausible." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting Twombly, 550 U.S. at 570).

Burnett also argues that the mere fact that the Plaintiffs were all of Indian descent does not "demonstrate or support any 'anti-Indian' animus on the part of Burnett." (Doc. No. 77, p. 6) (claiming that Indian workers were recruited because "India was believed to have a large pool of skilled workers"). In some respects, Burnett is correct. The mere fact that the workers recruited by the Defendants were all of Indian descent does not necessarily lead to a conclusion that there was racial animus. See e.g., United States v. Calimlim, 538 F.3d 706, 711 (7th Cir. 2008) ("Obtaining the services of another person is not itself illegal; it is only illegal when accompanied by one of the three given circumstances [in 18 U.S.C. §1589], and the jury must find that the defendant knew that the circumstance existed."). But, the numerous factual

allegations concerning the conditions the Plaintiffs faced upon arrival to the United States, coupled with the fact that the Plaintiffs argue that only the Indian workers were treated in this manner, makes it plausible that that both Burnett, as well as the conspiracy as a whole, were motived by racial animus. For instance, the complaint alleges that that only the *Indian* workers were forced to live in the "man camps," that the *Indian* workers were "subjected to different, less favorable employment conditions" and generally—*as a class*—the *Indian* workers were subject to improper treatment. (See Doc. No. 76, pp. 4–7.) The disparate treatment of a racially identifiable class of people creates a plausible claim of racial animus.

In addition, Burnett's attempts to analogize the facts of this case to those of *Iqbal* are unavailing. (Doc. No. 77, pp 4–5.) In *Iqbal*, at issue was a policy of seeking out potential terrorists in the wake of the 9/11 attacks. Iqbal, 556 U.S. at 682. The Supreme Court noted that "[i]t should come as no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the attacks would produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs or Muslims." Id. The Court went on to reason: "As between that 'obvious alternative explanation' for the arrests, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion." Id. The facts of this case, however, do not align with the Court's reasoning in *Iqbal*. Here, there was a deliberate attempt to seek out workers of Indian descent, whereas in *Iqbal*, the fact that one racial group was targeted was merely a consequence of a racially neutral policy. Moreover, what further distinguishes the Plaintiffs' allegations from those in *Iqbal* is that the Plaintiffs have alleged numerous specific ways in which they were treated differently *because of* their membership in a racially defined class. Compare id. ("[T]he complaint does not show, or even intimate, that petitioners

7

purposefully housed detainees in ADMAX SHU due to their race, religion or nation origin."). Because the Plaintiffs have pled that they were treated differently because of their membership in a certain class, and offered specific instances, they have "nudged their claims across the line from conceivable to plausible . . . ." Twombly, 550 U.S. at 570.

   B. State-law claims

In a prior order, the undersigned recommended that the Plaintiffs' state-law claims be dismissed because "it was unclear if any of Burnett's alleged conduct used to support the claims occurred in Texas." (Doc. No. 64, p. 9.) The Plaintiffs' amended complaint adds new allegations attempting to show how Burnett's conduct, in Texas, damaged them. (Doc. No. 79, pp. 4–5) (discussing the "additional allegations related to acts and omissions by Burnett in Texas"). Burnett argues that while the Plaintiffs have alleged facts showing that their breach of contract claim contains a choice of law clause implicating either Mississippi or Indian law, Plaintiffs have made no showing that Texas law applies. (Doc. No. 77, p. 9.) Moreover, Burnett argues—without undertaking a comprehensive choice of law analysis—that Indian law applies to the remainder of the Plaintiffs claims, and therefore, because Texas law applies to none of the Plaintiffs' state-law claims, they should all be dismissed. (Id. at pp. 10–11.)

Burnett's motion should be denied for two reasons. First, the parties miss a critical point—the Plaintiffs have adequately alleged at least one federal cause of action, therefore, this court has supplemental jurisdiction over the state-law claims regardless of what law applies to each individual claim.[2] See 28 U.S.C. § 1367. Second, in the Plaintiffs' amended complaint, they now clearly allege that their claims are "recognized under the laws of Texas, Mississippi, and India." (Doc. No. 76, pp. 79–80.) The Plaintiffs' original complaint contained no such indication, so it was unclear precisely what substantive law governed their claims. By clearly

---

   2. This point was not raised in the parties' initial briefing.

stating that their claims are recognized under Texas, Mississippi, or Indian law, the Plaintiffs have adequately pled their state-law causes of action. See McGee v. Arkel Int'l L.L.C., 671 F.3d 539, 543 (5th Cir. 2012) (holding that Iraqi law applied to the plaintiff's tort claim).

Burnett also argues that the Plaintiffs' claims are barred by the statute of limitations. The undersigned addressed this argument in its previous order, noting that "to the extent the Burnett Defendants believe the Plaintiffs' state law claims are still barred by the statute of limitations in light of Judge Zainey's tolling order, that is a matter best addressed in a motion for summary judgment, after the parties have had an opportunity for full discovery and the court can consider evidence outside the pleadings." (Doc. No. 64.) Burnett has pointed to no new or different information persuading the undersigned that a determination on tolling can be made without considering extrinsic evidence. Accordingly, such an issue is still better addressed in a motion for summary judgment.

## VI. Recommendation

For the reasons stated above, the undersigned recommends that Burnett's "Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6)" (Doc. No. 77) should be denied.

## V. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c) (Supp. IV 2011), each party to this action has the right to file objections to this report and recommendation. Objections to this report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this report, and (4) be no more than eight pages in length. See 28 U.S.C. § 636(b)(1)(c); FED R. CIV. P. 72(b)(2); LOCAL RULE CV-72(c). A party who objects to this report is entitled to a de novo determination by the United States District Judge of those proposed findings and

9

recommendations to which a specific objection is timely made.  <u>See</u> 28 U.S.C. § 636(b)(1)(c); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, <u>see</u> <u>Rodriguez v. Bowen</u>, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge.  <u>See</u> <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 27th day of February, 2015.

_____
Zack Hawthorn
United States Magistrate Judge